IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-02514-RPM

DONNA BURKHEAD f/k/a DONNA FAHRENKRUG,

    Plaintiff,
v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

    Donna Burkhead,[1] born January 19, 1961, began experiencing pain consistent with fibromyalgia in 2000. Ms. Burkhead was employed at California Casualty Management Company as a senior telecommunications analyst, responsible for implementation and analysis of telecommunications hardware, software and services in a broad range of activities described in a job description, R.723-5. She has been under the care of Dr. Peter Clothier, D.O., a family practice physician in Colorado Springs and Dr. David Richman, M.D., a specialist in physical medicine and rehabilitation. Dr. Richman began his treatment in May, 2005. His impression was fibromyalgia, based on her self reporting of having very little energy, and diffuse body pain. R. 797-799.

    Ms. Burkhead continued to work, attempting to control her condition with multiple pain medications and aerobic exercise, until April 22, 2007. She saw Dr. Clothier on April 19, 2007, reporting that her symptoms had flared significantly and that she had

---

    [1]The plaintiff was known as Donna Fahrenkrug during most of the relevant time but to simplify, her present name has been used.

decided to seek disability realizing that her condition would not allow fruitful employment and she would rather focus on family.  R. 933.

On April 22, 2007, she submitted a claim for Short Term Disability Benefits (STD), by telephone, pursuant to a group insurance policy issued by Life Insurance Company of America (LINA).  That policy defines disability as follows:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
> 1. Unable to perform the material duties of your Regular Occupation; and
> 2. Unable to earn 80% or more of your Covered Earnings from working in your Regular Occupation.

A.R. 22

> The STD Policy defines "Regular Occupation" as:
>
> The occupation you routinely perform at the time the Disability begins.  In evaluating the Disability, we will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.  It is not work tasks that are performed for a specific employer or at a specific location.

A.R. 23

In response to that call, LINA requested information from Dr. Clothier, by letter dated May 2, 2007, to include office visits from April 1, 2007.  R. 929.  In response, Dr. Clothier submitted a Department of Labor form for the Family and Medical Leave Act, saying that his patient was diagnosed with "incurable fibromyalgia" in early 2000, was "presently and completely incapacitated" and "cannot perform any functions."  R. 930-932.  He also sent LINA his office note from the April 19, 2007, visit.

A nurse consultant at LINA requested information from Dr. Richman.  Dr. Richman sent copies of an office visit note of May 10, 2007, saying Dr. Clothier put Ms. Burkhead on disability and that she had stable pain levels with "improved QOL" with

instructions to continue to exercise and stop smoking. R.920. Dr. Richman also provided a list of medications with refill dates from June 2, 2006, to May 29, 2007.

Based on the nurse's conclusion that a functional impairment was not demonstrated, LINA sent a denial letter, dated June 13, 2007, signed by Glenda Diaz, claims manager. She wrote that "There are no clinical findings or objective testing that support the severity of your symptoms that would preclude you from performing your occupation as a Communications Analyst." R. 911.

Before issuing the denial letter, Ms. Diaz, by letter dated June 5, 2007, had asked Dr. Richman to submit copies of office visits from April 1, 2007, and other information. On June 25, 2007, LINA received his responses to the questions on its medical request form. R. 909. Dr. Richman gave a diagnosis of "Fibromyalgia, chronic low back pain, fatigue, depression, bipolar d/o;" and said "chronic pain and fatigue with anxiety impacted her return to work." Dr. Richman listed her pain medications; said that he had not placed restrictions on her at work or at home and in response to the question whether the patient could return to work, wrote in "possibly" and "Highly variable pain levels & fatigue along [with] emotional status makes it very difficult to hold consistent job." R. 909. As noted LINA received this information after sending the denial letter.

On July 23, 2007, Burkhead faxed a copy of the insurer's medical request form, completed by Dr. Clothier on July 17, 2007, in which he also opined that she could possibly return to work, but wrote that "pain and level of disability vary greatly from day to day–makes a static work environment unlikely to accommodate." R. 900. Dr. Clothier also listed multiple medications for pain and gave work restrictions, limiting sitting, standing, walking and lifting. The reviewing nurse consultant wrote that because

the claim of disability rested only on self-reported symptoms with no documentation of a functional impairment, the claim should be denied.  Ms. Diaz informed the claimant of that decision by letter, dated August 2, 2007.  R. 893-894.

Ms. Burkhead retained counsel, who submitted an appeal letter, with attachments, dated February 29, 2008.  He included a transcript of a recorded statement from Dr. Richman, taken by counsel on January 3, 2008, answering questions about the clinical diagnosis of fibromyalgia, the variability of impairments of pain and fatigue and the upredictability of bad days.  Dr. Richman said he recommended a low stress environment and an environment that would not put her in a severe fatigue mode toward the end of the day with the flexibility to take breaks and to go home on bad days.  R. 825-831.  Dr. Richman said that he had last seen Ms. Burkhead as a patient, on November 15, 2007.

This submission was reviewed by Dr. Penny Chong, M.D., a staff physician of LINA, who is board certified in internal medicine.  She assessed the claimant's complaints as "somatic" and noted that a vocational report stated that Ms. Burkhead did not like the mental stress associated with her job.  R. 652.

In a letter to counsel, dated April 7, 2008, LINA informed that Ms.Burkhead's appeal was denied.  That letter, signed by Carolynne Bloch, as Appeal Claim Manager, said that the complete file was "reviewed by our onsite Board Certified Rheumatologist." R. 649.

The plaintiff's counsel submitted a second appeal of the denial of the STD claim by letter, dated October 7, 2008, attaching additional materials from Dr. Clothier, notes from Dr. McNeil, a rheumatologist who examined the claimant on July 15, 2008, and a

Functional Capacity Evaluation conducted September 9, 2008.  The file was referred to Dr. Scott Taylor, a LINA on-staff physician, board certified in occupational medicine.  He concluded that the records did not "provide documentation of physical functional deficits by clinically measurable testing . . . or of disease severity sufficient to support restrictions" as they had been given by Dr. Clothier.  R. 597.

The second appeal was denied by a letter to counsel, dated January 16, 2009, signed by Anna Bedikan, appeal claim manager, advising that Ms. Burkhead's administrative remedies for denial of her STD claim had been exhausted.  R. 589-590.

Ms. Burkhead submitted a claim for long term disability benefits on May 1, 2008.  That claim was made pursuant to a LINA Group Long Term Disability Income Policy (LTD Policy) defining "total disability" as being "unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training, or experience" because of injury or sickness.  R. 116.

Pursuant to LINA's requests for documents from Dr. Clothier and Dr. Richman, the latter submitted notes from an office visit on May 5, 2008.

Dr. Richman wrote that his patient was very upset with him because she had her disability denied and that she was clearly frustrated despite his trying to educate her on the difference between physical impairment and disability.  R. 529.  Dr. Clothier's notes for an office visit on May 6, 2008, also reflect that Ms. Burkhead was upset that she was denied disability.  Dr. Clothier continued her multiple pain medications.  R. 517-518.

The LTD claim was denied by LINA's letter of September 11, 2008.  R. 494-495.  The plaintiff's counsel submitted an appeal of that denial by letter dated October 7,

2008.  R. 601-602.  He included a functional capacity evaluation done on September 10, 2008, by Gail Gerig, a physical therapist, concluding that Ms. Burkhead will not be able to return to her previous work and would require a work position that allows for a variety of work tasks with frequent posture changes and a flexible work schedule.  R. 622-628.

Dr. Charles McCool, a LINA staff internal medicine physician, reviewed the records and concluded that there were no documented deficits in range of motion.  R. 167.  The appeal was denied by letter of January 6, 2009.  R. 440-441.

A second appeal of the LTD claim was submitted by counsel on June 24, 2009, including office visit notes of Dr. William Griffis, D.O., from April 15, 2009, to June 15, 2009.  In an evaluation letter to Dr. Clothier, Dr. Griffis said that he had a long discussion with this patient concerning pain management.  R. 433-439.

An MRI of the lumbar spine and a note from Dr. Martin Verhey, M.D., reporting a low back epidural steroid injection on April 2, 2009, were sent to LINA in July, 2009.  R. 422.

LINA sent the claim file for an independent medical file review by Dr. Rick Snyder, D.O.  His report included his summary of a telephone discussion with Dr. Richman on August 7, 2009.  The reviewer wrote that Dr. Richman said that he had not seen Ms. Burkhead since May 5, 2008, and that he would not support lost physical capacity or functional deficits.  R. 415-418.  Dr. Snyder also wrote that he had placed a call to Dr. Clothier without receiving a response after three days wait.

The appeal of the denial of LTD benefits was denied by letter of August 20, 2009.  R. 408-410.

Donna Burkhead filed this civil action for benefits under both policies pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* To recover, Ms. Burkhead must show that LINA's denials were such an unreasonable exercise of the discretion it had to determine the claims, as to make those decisions arbitrary and capricious.

Upon review of all of the administrative record submitted, the plaintiff has met that burden as to the STD policy but failed to do so for LTD benefits. The difference is between the impairments of functionality caused by fibromyalgia affecting her ability to perform the duties of her occupation as a senior telecommunications analyst and any occupation for which she is or may be qualified.

LINA does not dispute the diagnosis of fibromyalgia. It does not dispute Dr. Richman's description of the effects of that medical condition in his recorded interview of January 3, 2008. Of particular importance in this case is that the pain and fatigue experienced by the patient varies with the conditions of employment. There is no dispute that a stressful working environment enhances these symptoms.

LINA relies heavily on the fact that Ms. Burkhead was able to do her job at California Casualty Management Company for seven years. The defendant fails to recognize that she first began treatment with Dr. Richman in 2005 and that his medical records and those of Dr. Clothier show increasing difficulty in doing her work. The suggestion that Ms. Burkhead simply made a life choice to quit that employment is not warranted.

LINA made no effort to obtain information about the stress levels experienced by the plaintiff in her work. Both Doctors Clothier and Richman recognized the

responsibilities she had in her work and their opinions that she could possibly return to work were based on their recommendations that she should reduce stress, have a flexible work schedule, take breaks and be able to miss work on bad days.  They implicitly found that these recommendations were not compatible with her job at California Casualty Management Company.

Recognizing that the definition of  "Regular Occupation" means the duties of the occupation as normally performed in the national economy, not in her specific employment, the fault in the defendant's evaluation of the STD claim is that there is nothing to show that LINA did any investigation of the work of a telecommunications analyst anywhere.  Reference to the Dictionary of Occupational Titles is of no value in considering this type of employment in an industry that is highly technical with new developments in hardware and software and the employee must interact with many people as customers and co-workers.  Additionally, there is no indication that any of the reviewers of the medical records have any experience in the diagnosis and treatment of fibromyalgia.  To the contrary, their emphasis on the lack of objective evidence of disabling pain reflects a failure to understand this medical condition.  LINA's performance in this case is much like that criticized by the court in *DuPerry v. Life Ins. Co. Of North America,* 632 F.3d 860 (4th Cir. 2011).

The denial of the STD claim was made without a fair evaluation of the claimant's ability to perform the type of work she was doing and is, therefore, arbitrary and capricious.

The any occupation test for LTD benefits is met only if the claimant can show that her fibromyalgia and fatigue limit her to such an extent that she is unable to do any work

for which she is or may become qualified.  Ms. Burkhead did not make that showing to LINA. In fact, Drs. Richman and Clothier suggested that she seek other employment which will accommodate her varying levels of pain and fatigue.  She has not demonstrated that such employment is unavailable.

The plaintiff rightly criticizes LINA's reliance on Dr. Snyder's opinion.  His emphasis on his reported conversation with Dr. Richman is not a proper basis for developing his opinion.  He failed to recognize that Dr. Richman had not seen this patient since May, 2008, and there is nothing to show that Dr. Snyder understands fibromyalgia.  Nonetheless, the material submitted to LINA does not show that its conclusion that Ms. Burkhead is unable to do any work in gainful employment was arbitrary and capricious.

The plaintiff is entitled to payment of the benefits provided by the STD policy but not those under the LTD policy.  It is

ORDERED, that on or before May 3, 2012, counsel shall stipulate to the amount to be awarded, or if no agreement is reached, file their respective computations with their reasons for disagreement.

DATED: April 13, 2012

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge